UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

___

| | |
|---|---|
| **SIERRA CLUB INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13-CV-3408 |
| ) | |
| **FUTUREGEN INDUSTRIAL** ) | |
| **ALLIANCE INC., et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION

Plaintiff, Sierra Club Inc., filed a Complaint (#1) against Defendants, Futuregen Industrial Alliance Inc. and AmerenEnergy Medina Valley Cogen LLC, on December 9, 2013. The complaint alleged that Defendants were attempting to construct a major modification without a PSD permit in violation of the Clean Air Act. On February 21, 2014, Defendants filed a Motion for Judgment on the Pleadings and a Joint Motion to Dismiss (#13). This court held a hearing on Defendants' motion on May 16, 2014. Following arguments, the parties were asked to brief the issue of review before the Illinois Pollution Control Board (IPCB). Plaintiff and Defendants filed briefs in accordance with this court's request on May 30, 2014. After a careful review and consideration of the arguments of the parties and the documents they have submitted, this court concludes that Defendants' Motion for Judgment on the Pleadings and Joint Motion to Dismiss (#13) should be GRANTED.

BACKGROUND

In September 2010, Defendant Futuregen Industrial Alliance Inc. signed a Cooperative Agreement with the United States Department of Energy to develop the FutureGen 2.0 Project

(Project). Defendant AmerenEnergy Medina Valley Cogen LLC was a partner to the Project. The Project is a full-scale coal-fired oxy-combustion power plant at the existing Meredosia Energy Center (Center) in Meredosia, Illinois. The Project will physically replace an existing boiler at the Center with a new oxy-combustion capable boiler that will use the existing Turbine 4 and other auxiliary equipment. Other existing boilers at the Center have been shut down and will not be restarted.

On February 9, 2012, Defendants submitted an initial application to authorize construction of the Project to the Illinois Environmental Protection Agency (IEPA). Defendants then submitted a revised permit application on June 18, 2013. The IEPA issued a draft construction permit in August 2013 and held a public comment period regarding the draft permit from August 24, 2013 through November 8, 2013. Plaintiff participated in the process by providing written comments to the IEPA discussing their concerns with the draft permit. Specifically, Plaintiff expressed its concern that the Project would cause a significant net emission increase which would necessitate a PSD permit. Plaintiff was able to orally challenge the Project at a hearing before the IEPA. Again, Plaintiff argued that the Project required a PSD permit.

On December 9, 2013, Plaintiff filed its Complaint (#1) with this court, alleging that Defendants were attempting to construct a major modification to the Center without a PSD permit. The complaint stated that the claim was being brought under the citizen suit provision of the Clean Air Act. An Amended Complaint (#21) was filed on March 14, 2014.

On December 13, 2013, the IEPA issued an air pollution control construction permit to Defendants for construction of the Project. The decision noted Plaintiff's concerns and explicitly

rejected its argument that a PSD permit is required for the Project. The IEPA stated that "the proposed facility is not a major project under the federal PSD rules." It further noted that there were "contemporaneous decreases in emissions from the permanent shutdown of the existing boilers at the Meredosia Energy Center such that the net increases in emissions of regulated NSR pollutants from this project will not be significant."

INSTANT MOTION

On February 2, 2014, Defendants filed a Motion for Judgment on the Pleadings and a Joint Motion to Dismiss (#13). In the motion, Defendants argued that this court: (1) lacks subject matter jurisdiction under 42 U.S.C. § 7604(a)(3) because Defendants had the proper permit; and (2) should abstain from hearing the case because Plaintiff's complaint is simply a collateral attack on the IEPA's decision. On March 10, 2014, Plaintiff filed a Memorandum in Opposition (#17) to Defendants' motion. Defendants' Reply (#28) to Plaintiff's memorandum was filed on April 7, 2014.

This court held oral arguments with reference to Defendant's Motion (#13) on May 16, 2014. During the arguments, Defendants' attorney stated that abstention is appropriate because the federal government has delegated its authority to determine which projects in Illinois require a PSD permit to the IEPA. Further, Illinois has established a procedure, through the IPCB, where any party, including Plaintiff, can challenge the IEPA's decision not to grant Defendants a PSD permit. Therefore, Defendants' attorney argued that because Plaintiff has an available state forum in which to challenge the IEPA's decision, this court should abstain.

Plaintiff's attorney argued that abstention was not appropriate because the IEPA works as a contractor for the United States Environmental Protection Agency, therefore, they are simply

3

applying federal law and regulations. Further, Plaintiff's counsel stated that he simply did not "know the procedure in front of the Illinois Pollution Control Board" and that it was difficult for Plaintiff to find and hire an Illinois attorney that could appeal the IEPAs decision before the IPCB. He speculated that an appeal before the IPCB would not allow Plaintiff the discovery it required.

At the conclusion of the hearing, this court asked the parties to submit briefs detailing the discovery available from the IPCB and how that would impact both sides' ability to present their case. Plaintiff's brief acknowledged that the IPCB would accept a citizen's enforcement complaint, however, it argued that the Illinois forum was not convenient. Plaintiff claimed that the IPCB was not an acceptable forum because: (1) Plaintiff is not certain whether it can pursue its claim in front of the IPCB; (2) Plaintiff believes that discovery may be more limited than under the federal rules; (3) Plaintiff believes the IPCB cannot issue subpoenas to out of state entities and personnel; and (4) no attorney's fees are available to Plaintiff for any action before the IPCB. Defendants' brief argued that the same methods of discovery under the Federal Rules are available before the IPCB with regard to document production requests, requests to admit, interrogatories, and depositions. Further, Defendants outlined how the IPCB could issue subpoenas to out of state third parties.

ANALYSIS

Jurisdiction

Defendants first contend that the case should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's Complaint (#1) states that this court has jurisdiction under 42 U.S.C. § 7604(a). § 7604(a)(3) states that any person may commence a

4

civil action on his own behalf "against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment)."

Defendants point to the IEPA's decision granting them an air pollution control construction permit and argue that jurisdiction under § 7604(a)(3) is improper because, based on that decision, they have the required permit. Plaintiff argues that the proposed modification is major and requires a PSD permit. Therefore, because Defendants do not have a PSD permit, jurisdiction is proper under § 7604(a)(3).

When ruling on a motion to dismiss a complaint for lack of jurisdiction, this court must take all of the complaint's well pled factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993). Here, Plaintiff claims that Defendants plan to construct a major modification to their plant, and therefore, a PSD permit is required. Assuming that fact is true, Defendants' lack of a PSD permit would confer jurisdiction on this court under § 7604(a)(3).

A finding of jurisdiction in this case is supported by *Weiler v. Chatham Forest Products, Inc.*, 392 F.3d 532 (2nd Cir. 2004). In *Weiler*, the Second Circuit found that "a state determination that a prospective source of air pollution is not a major emitting facility does not prevent a private plaintiff from bringing a suit seeking to enjoin the construction of the facility pursuant to section 304(a)(3) of the Act, 42 U.S.C. § 7604(a)(3)." Therefore, based on the reasoning in *Weiler* and the fact that the complaint alleges that Defendant is constructing a major modification without a PSD permit, this court finds that it has jurisdiction under § 7604(a)(3).

Abstention

Defendants next argue that this court should abstain from hearing this case. Under the *Burford* abstention doctrine, federal courts are counseled to decline to interfere with proceedings or orders of state administrative agencies where timely and adequate state court review is available, if (1) there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case; or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

In this case, Plaintiff argues that its claim arose under the citizen suit provision of the Clean Air Act, and therefore it is a purely federal question. As such, Plaintiff argues that abstention is not appropriate. However, after a careful examination of the claim, this court has determined that the suit merely resurrects objections to the decision made by the IEPA that Defendants do not need a PSD permit. Therefore, the complaint actually asserts a collateral attack on the decision made by the IEPA under state regulatory laws.[1] See *Sugarloaf Citizens Ass'n v. Montgomery County, Md.*, 33 F.3d 52 (4th Cir. 1994); *Jamison v. Longview Power,*

---

[1] Plaintiff's argument that the claim is purely federal also ignores the fact that the federal government has delegated its authority to issue PSD permits to the State of Illinois and that the issuance of a permit within the state includes consideration of state policies. See *Union Elec. Co. v. E.P.A.*, 427 U.S. 246, 256-57 (1976) (under the 1970 Amendments to the Clean Air Act, states retain the primary responsibility for formulating pollution control strategies); 42 U.S.C. § 7041(a)(3) (air pollution prevention and air pollution control at its source is the primary responsibility of states and local governments). Therefore, although Illinois' authority comes from the federal government, the issuance of permits within the state includes state specific concerns.

*LLC*, 493 F.Supp. 2d 786, 791 (N.D.W.VA. 2007).

Defendants argue that abstention is appropriate because intervention will be disruptive of Illinois' effort to establish a coherent policy with respect to the issuance of permits by the IEPA. The Seventh Circuit has held that abstention for this reason is appropriate if (1) the state offers some forum in which claims may be litigated; and (2) the forum stands in a special relationship of technical oversight or concentrated review to the evaluation of those claims. *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998). Therefore, in order to determine if abstention is appropriate in this case, this court must determine whether Illinois has a timely and adequate system of administrative and judicial review for the state permitting decision at issue in this case.

The United States Environmental Protection Agency (EPA) has the authority to issue PSD permits. However, the EPA has delegated its authority to issue PSD permits within the State of Illinois to the government of the State through the IEPA. See 46 Fed. Reg. 9580, 9582 (Jan. 29, 1981). The IEPA also has the authority to issue permits for those stationary sources that are not subject to the PSD permitting requirements. See 35 Ill. Adm. Code § 201.142. The IEPA has a clear system in place for the issuance of permits within the State of Illinois.

After the IEPA has made a determination regarding the issuance of a permit, review may be had before the IPCB. Any person may file a complaint with the IPCB attacking any permit or term or condition of a permit. 415 ILCS 5/31(d)(1) (West 2014). As the case proceeds before the IPCB, the assigned hearing officer sets time deadlines for discovery. 35 Ill. Adm. Code § 101.616. "All relevant information and information calculated to lead to relevant information is discoverable, excluding those materials that would be protected from disclosure in the courts of

7

this State pursuant to statute, Supreme Court Rules or common law, and materials protected from disclosure under 35 Ill. Adm. Code 130." 35 Ill. Adm. Code § 101.616(a).

In this case, Defendants submitted an application for a permit to the IEPA. Both Defendants and Plaintiff participated in the permit process. At the conclusion of the process, the IEPA granted Defendants a permit, but found that a PSD permit was not necessary. At oral arguments, Plaintiff admitted that it has not sought review of the decision before the IPCB. In explaining its decision to bring the case before this court instead of the IPCB, Plaintiff's attorney stated that he did not "know the procedure in front of the Illinois Pollution Control Board." While the lack of an appropriate state forum may prevent abstention, an attorney's ignorance of the procedures before the state agency has never been found to be a bar to abstention by a federal court.

This court has carefully reviewed the procedures before the IEPA and the IPCB, including an in depth study of Chapter I of Title 35 of the Illinois Administrative Code. Following this review, it is evident that Illinois offers a clear and impartial forum, through the IPCB, where Plaintiff's claims may be litigated. Further, this court believes that Illinois cannot be expected to effectively control air pollution if it must contend with a federal district court, not as familiar with its regulatory law, second guessing its decisions under the state's regulatory scheme. Based on these findings, this court believes that dismissal is appropriate pursuant to the *Burford* doctrine because Illinois offers an appropriate forum and the exercise of federal review in this case would be disruptive of Illinois' efforts to establish a coherent policy with respect to pollution control within the state. See *Burford*, 319 U.S. 315; *New Orleans Public Service, Inc.*, 491 U.S. at 361. Therefore, this case presents a classic situation for applying *Burford* abstention.

8

See *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 481 (6th Cir. 2004); *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995); *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989).

Based on the foregoing, this court finds that abstention is appropriate. Therefore, Defendant's Motion for Judgment on the Pleadings and Joint Motion to Dismiss (#13) is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Judgment on the Pleadings and Joint Motion to Dismiss (#13) is GRANTED.

(2) Plaintiff's complaint is dismissed without prejudice.

(3) This case is terminated.

ENTERED this 9th day of June, 2014.

s/Colin S. Bruce
_____
COLIN S. BRUCE
U.S. DISTRICT JUDGE